**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JAMES SPENCER,

                                        Plaintiff,

          - v -                                              Civ. No. 6:03-CV-733
                                                                    (FJS/RFT)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

**APPEARANCES:**                                    **OF COUNSEL:**

ERWIN, McCAIN LAW FIRM                              THOMAS C. ERWIN, ESQ.
Attorney for Plaintiff
23 Elk Street
Albany, NY 12207

HON. GLENN T. SUDDABY                               WILLIAM H. PEASE
United States Attorney for the Northern District of New York   Assistant United States Attorney
Attorney for Defendant
P.O. Box 7198
100 South Clinton Street
Syracuse, NY 13261

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION and ORDER[1]

        In this action, Plaintiff James Spencer moves, pursuant to 42 U.S.C. § 405(g), for review of a

decision by the Commissioner of Social Security denying his application for disability insurance

benefits.  Based upon the following discussion, this Court recommends that the Commissioner's

decision denying Social Security benefits be **vacated and remanded for calculation of benefits**.

---

        [1] This case has proceeded in accordance with General Order 18 which sets forth the procedures to be followed
when appealing a denial of Social Security benefits.  Both parties have filed briefs, though oral argument was not heard.
Dkt. Nos. 5 & 7.  The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. §
636(b) and N.D.N.Y.L.R. 72.3(d).

## I. BACKGROUND

### A. Facts

The facts set forth in Spencer's Brief under the heading "STATEMENT OF FACTS" as supplemented in the Commissioner's Brief under the heading "STATEMENT OF THE CASE" are adopted, with the exception of any inferences or legal conclusions expressed therein. Dkt. No. 5, Pl.'s Brief at pp. 3-12; Dkt. No. 7, Def.'s Brief at pp. 1-5. Generally, Spencer alleges a disability due to fibromyalgia and myofascial pain syndrome.[2] Dkt. No. 4, Admin. Transcript [hereinafter "Tr."] at pp. 16 & 75.

### B. Procedural History

On May 12, 1998, Spencer filed an application for disability insurance benefits alleging a disability onset date of August 23, 1996. *Id.* at pp. 56-58. The application was denied initially and on reconsideration. *Id.* at pp. 21-30. On December 16, 1998, a Hearing was held before Administrative Law Judge (ALJ) J. Lawson Brown (*Id.* at pp. 316-40), and on March 25, 1999, the ALJ issued an unfavorable decision against Spencer (*Id.* at pp. 50-55). On November 20, 2001, the Appeals Council vacated the ALJ's decision and remanded the case back to the ALJ with instructions that the ALJ re-contact one of Spencer's Treating Physicians for clarification of a rendered opinion and reassess the weight given to Spencer's Treating Physicians' opinions. *Id.* at pp. 253-55. A second Hearing was held on February 5, 2002, before ALJ Brown (*Id.* at 341-55), and on May 1, 2002, the ALJ issued a second unfavorable decision against Plaintiff (*Id.* at pp. 15-20). On June 5, 2003, the Appeals Council

---

[2] Fibromyalgia and myofascial pain syndrome are "common nonarticular disorders characterized by achy pain, tenderness, and stiffness of muscles, areas of tendon insertions, and adjacent soft tissue structures." *The Merck Manual* 481 (17th ed. 1999). Fibromyalgia is "often associated with general symptoms, such as sleep disturbances, fatigue, stiffness, headaches, and occasionally depression." Medical Dictionary Online, *available at* http://www.online-medical-dictionary.org/omd.asp?q=fibromyalgia (citing ADAMS ET AL., PRINCIPLES OF NEUROLOGY 1494-95 (6th ed.) (last visited August 3, 2007)).

concluded there was no basis under the Regulations to grant Plaintiff's request for review, thus rendering the ALJ's May 2002 Decision the final determination of the Commissioner. *Id.* at pp. 7-10. Having exhausted all his options for review through the Social Security Administration's tribunals, Plaintiff now brings this appeal.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied. *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325-26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Succinctly defined, substantial evidence is "more than a mere scintilla," it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); 42 U.S.C. § 405(g). Where the weight of the evidence, however, does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d at 986.

### B. Determination of Disability

To be considered disabled within the meaning of the Social Security Act, a plaintiff must

establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, the claimant's physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national economy. *Id*. at § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis set forth in the Social Security Administration Regulations. 20 C.F.R. § 404.1520. At Step One, the Commissioner "considers whether the claimant is currently engaged in gainful activity." *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the inquiry ends. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and assesses whether the claimant suffers from a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). If the claimant suffers from a severe impairment, the Commissioner considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations. *Id*. at § 404.1520(d). The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience. *Berry v. Schweiker*, 675 F.2d at 467. Where the claimant has such an impairment the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity. *Id*. If the claimant's impairment(s) does not meet or equal the listed impairments, the Commissioner proceeds to Step Four and considers whether the claimant has the residual functional

capacity (RFC)[3] to perform his or her past relevant work despite the existence of severe impairments. 20 C.F.R. § 404.1520(e).  If the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy.  *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. § 404.1520(f).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four).  *Berry v. Schweiker*, 675 F.2d at 467.  If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy.  *Id.*; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990).  In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills.  20 C.F.R. § 404.1520(f); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

## C.  ALJ Brown's Findings

Spencer was the only witness to testify at the Hearing.  Tr. at 341-55.  In addition to such testimony, the ALJ had Spencer's medical records consisting of treatment reports and opinions from various treating, examining, and/or consulting physicians, including, 1) M. O'Brien, M.D., St. Clare's Hospital; 2) Inez L. Pagnotta, M.D., Treating Physician; 3) Marjorie Hermes, M.D., Treating Physician; 4) George Hughes, M.D., Treating Physician; 5) Harry D. Lindman, D.O., Treating Physician; 6)

---

[3] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting.  Your residual functional capacity is what you can still do despite your limitations."  20 C.F.R. § 404.1545(a).

Martin S. Farber, M.D., Ph.D, Consulting Rheumatologist; 7) Donald Wexler, M.D., Consulting Rheumatologist; 8) Richard Clift, M.D., Gastroenterologist; 9) Joseph Emrich, M.D., Consulting Neurosurgeon; 10) Sheldon B. Staunton, M.D., Consulting Neurologist; 11) V.C. Kamath, M.D., Consulting Neurologist; 12) William Rogers, M.D., Consulting Orthopedist; 13) John Seltenreich, Ph.D., Consulting Psychiatrist; 14) Phuong N. Vinh, M.D., Radiologist; 15) Jay Salwen, M.D., Radiologist; 16) Donald Killam, M.D., Radiologist; 17) Donald Clark, Physical Therapist; 18) K. Swensen, Physical Therapist; 19) Frank Matthew, Physical Therapist; 20) Abdul Hameed, M.D., Non-Examining Social Security Agency (SSA) RFC Assessor; and 21) J. Alpert, M.D., Non-Examining SSA Mental RFC Assessor.  *Id.* at pp. 105-236 & 282-306.

The ALJ noted that Spencer met the special insured status requirements and was insured for benefits through December 31, 2001.  *Id.* at p. 16.  Using the five-step disability evaluation, ALJ Brown found that 1) Spencer had not engaged in any substantial gainful activity since August 23, 1996, the alleged onset disability date; 2) he has a severe medically determinable impairment, namely, myalgia and muscle pain affecting his upper and lower back; 3) his severe impairments do not meet nor medically equal any of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4; 4) he has the RFC to perform light work and accordingly could not perform the lifting requirements associated with his  past work in the electronics field; but 5) given his RFC, Spencer is nevertheless capable of performing work that is available in the national economy and therefore is not disabled.  *Id.* at pp. 16-20.  After reviewing the administrative transcript, the Court finds that the ALJ did not apply the correct legal standards and his findings are not supported by substantial evidence of record.

### D.  Spencer's Contentions

Plaintiff contends that the ALJ's decision denying benefits should be reversed because (1) the ALJ failed to fully develop the medical record with regard to his Treating Physician's opinion as mandated by the Appeals Council on remand; (2) the ALJ did not properly follow the Treating Physician's Rule; and (3) the ALJ's assessment of Plaintiff's credibility was contrary to Social Security Regulations.  Dkt. No. 5.  Because of the interrelation of each contention, and because we find the ALJ committed reversible error, the Court will address Spencer's contentions together.

We start with the applicable law regarding the Treating Physician Rule.  Under the Regulations, a treating physician's opinion as to the nature and severity of a claimant's impairment is entitled to "controlling weight" when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2); *see also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999).[4]  However, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative."  *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1527(e)(1) (Commissioner provides the ultimate decision on disability).  The treating physician doctrine recognizes that a claimant's treating sources, which in most cases are medical professionals, are more apt to "provide a detailed, longitudinal picture of [the patient's] medical impairment(s) and may bring a unique perspective to the medical findings" as opposed to an evaluation of a one-time, non-examining, non-treating physician.  20 C.F.R. § 404.1527(d)(2); *see Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993).

When weighing all medical opinions and assessing what weight to accord, "[t]he duration of

---

[4] A "treating physician" is the claimant's "own physician, osteopath or psychologist (including outpatient clinic and health maintenance organization) who has provided the individual with medical treatment or evaluation, and who has or had an ongoing treatment and physician-patient relationship with the individual."  *Jones v. Apfel*, 66 F. Supp. 2d 518, 524-25 (S.D.N.Y. 1999) (quoting *Schisler v. Bowen*, 851 F.2d 43, 46 (2d Cir. 1988)).

a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof" are considerations. *Schisler v. Sullivan*, 3 F.3d at 568; 20 C.F.R. § 404.1527(d)(1)-(6); *see also Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998).   In the event the ALJ does not give controlling weight to the treating physician, he must specifically state the reasons for doing so.  20 C.F.R. § 404.1527(d)(2).

In reviewing the ALJ's May 2002 Decision, we find the ALJ improperly discounted Spencer's Treating Physicians' opinions at two critical points in his analysis.  First, in determining the severity of Spencer's impairments at Step Two, the ALJ discounted any diagnosis of fibromyalgia, chronic pain syndrome, and/or myofascial pain syndrome because such diagnoses were "not accompanied by any significant objective findings on examination or laboratory testing."  Tr. at p. 16.  Second, in determining Spencer's RFC, the ALJ assigned little weight to Dr. Pagnotta's opinion that Spencer was incapable of returning to gainful employment as he deemed such opinion to be unsupported by and inconsistent with the minimal objective clinical and laboratory evidence.  *Id*. at pp. 17-18.  The ALJ further stated that such opinion provided little insight into how Spencer's impairments affect his ability to perform work-related tasks.  *Id*.  Similarly, Dr. Farber's opinion was given little weight in light of the fact that Spencer did not have an ongoing treatment relationship with Dr. Farber, as Spencer only saw him once, and because Dr. Farber's opinion was not supported by the objective clinical laboratory findings; the ALJ further stated that Dr. Farber's opinion appeared to be nothing more than a recitation of the Plaintiff's subjective complaints, which he later found not credible.  *Id*. at p. 17.  In concluding that Plaintiff retained the RFC to perform light work, the ALJ gave "some weight" to the opinions and observations of Drs. Staunton (Neurological Consultant), Rogers (SSA Examining Physician), and Hameed (SSA Non-Examining Physician).  *Id*.

With regard to the Step Two severity determination, we find that the ALJ improperly ignored the multiple diagnoses of fibromyalgia replete throughout the record and his reason for doing so, that being the lack of objective medical findings, was erroneous.  As early as 1995, after years of Plaintiff experiencing and complaining of pain in his lower back and legs without any known etiology, Dr. Hermes, Spencer's then-primary care provider, suspected he was suffering from fibromyalgia.  Tr. at p. 161.  Upon referral to Dr. Wexler, a Rheumatologist, again the question of whether fibromyalgia was afoot was broached.  *Id*. at p. 159.  Because the etiology of Plaintiff's complaints of pain in his lower extremities was unclear, Dr. Wexler referred Spencer for a neurological consult with Dr. Kamath, who found such exam to be unremarkable and diagnosed Spencer with fibromyalgia.  *Id*. at p. 154.  The fibromyalgia diagnosis was similarly propounded and/or embraced by Drs. Emrich, Pagnotta, Farber, Hughes, and Lindman.[5]  *Id*. at pp. 112, 114, 116-17, 121, 127, 128, 154, 290, 296-98, & 300.  Even Drs. Rogers and Hameed, SSA Examining and Non-examining Consultants, respectively, accepted a diagnosis of myofacial pain and/or fibromyalgia.  *Id*. at pp. 211 & 229.  While Drs. Wexler and Staunton struggled with the fact that Plaintiff did not exhibit the classical trigger point locations associated with fibromyalgia, out of all the medical opinions in the record, only Dr. Staunton was persuaded that fibromyalgia was not the correct diagnosis.  *Id*. at pp. 145 (Dr. Staunton's June 26, 1995 Medical Report stating, "I really do not think these are fibromyalgias[;] [i]t just does not sound like fibromyalgias.")  & 159.  Despite his misgivings about the presence of this disease in 1995, upon further examination of Spencer in August 1996, Dr. Staunton noted that upon reviewing a MRI scan,

---

[5] Drs. Hughes and Lindman began treating Spencer after his first ALJ Hearing.  Though Dr. Hughes was wary in diagnosing Spencer with fibromyalgia until he became more acquainted with Spencer and his symptoms, after two months of treatment, Dr. Hughes similarly embraced the diagnosis and treated Plaintiff accordingly.  *Compare* Tr. at pp. 284-85 (noting that he would hold off on assessing a new patient) *with* Tr. at p. 290-91 (noting a diagnosis of fibromyalgia and treatment plan to alleviate symptoms of pain).  Dr. Lindman also set up pain management treatment plans.  *See generally id*. at pp. 294-300.

he found that the slight abnormality revealed therein was probably not the cause for Plaintiff's pain and Plaintiff was not a surgical candidate at that point. *Id*. at pp. 131 &133-34. And, though he ruled out at least one diagnosis which could have accounted for Spencer's complaints of pain, Dr. Staunton did not offer any opinion as to what definitively was the cause. *Id*. at p. 131. The record is also satiated with a plethora of tests conducted in an effort to unveil the etiology of Spencer's chronic pain, yet each test revealed little to no abnormalities, and certainly none that could account for Plaintiff's condition. *See* Tr. at pp. 133-34, 156-57, 167, 170, 173, 177, 181, 190, 192, 212 (various MRI, CT Scans, X-rays, and EKGs). The record is also replete with the varying treatments prescribed (including multiple medications – both over-the-counter and prescription, physical therapy, TENS unit, etc.) all of which failed to yield any positive results. *Id*. at pp. 111-12, 141-42, 147-50, 152-54, 182-83, 194, 198-200, 205, 206, 284, 290-97, 297-98, 308, 329-32, 334, 337-38, & 352-53. Yet, the ALJ remarkably discounted these consistent diagnostic opinions because of the lack of "objective findings on examination or laboratory testing." *Id*. at p. 16.

In *Green-Younger v. Barnhart*, the Second Circuit acknowledged that "fibromyalgia is a disabling impairment" which "eludes . . . measurement" through objective medical evidence because there are "no objective tests which can conclusively confirm the disease." 335 F.3d 99, 108 (2d Cir. 2003) (citations omitted); *see also Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 44-45 (2d Cir. 1991). As the Second Circuit aptly noted,

> [i]n stark contrast to the unremitting pain of which fibrositis patients complain, physical examinations will usually yield normal results-a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. There are no objective tests which can conclusively confirm the disease; rather, it is a process of diagnosis by exclusion and testing of certain "focal tender points" on the body for acute tenderness which is characteristic in fibrositis patients.

*Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d at 45 (citation omitted); *see also The Merck Manual* 481 (17th ed. 1999) (noting that fibromyalgia is recognized by certain "typical"

symptoms and through exclusion of other diseases).

Thus, an ALJ should not reject a treating physician's fibromyalgia diagnosis or refuse to give the treating physician's opinion controlling weight based upon a lack of objective evidence. *Green-Younger v. Barnhart*, 335 F.3d at 108. Nor may the ALJ "arbitrarily substitute his own judgment for competent medical opinion." *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983); *see also Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998). In the case at bar, in decrying a fibromyalgia diagnosis, the ALJ effectively substituted his own medical judgment for that of the various Treating Physicians, including those who are specialists in their field. The ALJ's refusal to accept the fibromyalgia diagnosis is contradicted by substantial evidence and is in contrast to the legal standards set forth above and therefore constituted reversible error.

We further find that the ALJ's apparent ignorance of the elusive nature of fibromyalgia clearly tainted the rest of the sequential disability evaluation. In assessing Spencer's RFC, the ALJ gave little weight to the opinions of Spencer's Treating Physicians and instead gave "some" weight to the opinions of two, one-time examining physicians and one non-examining physician. One justification propounded for discounting such opinions was the lack of supporting objective medical evidence and clinical laboratory findings. As with the previous error at Step Two, the ALJ's treatment of Spencer's Treating Physicians' opinions in assessing his RFC was in error.

In a letter dated November 26, 1996, Dr. Pagnotta opined that Spencer was "incapable of returning to gainful employment of any kind[.]" Tr. at p. 126. In this letter, Dr. Pagnotta explained that she arrived at Spencer's fibromyalgia diagnosis after consulting with Drs. Staunton (Neurologist), Wexler (Rheumatologist), and Emrich (Neurosurgeon). *Id.* In reciting the various treatments which failed to produce successful results, Dr. Pagnotta opined that Spencer's prognosis was unclear and that

*-11-*

although she desired his return to work, such a return would be impossible because "he becomes extensively fatigued while just doing simple household tasks like sweeping and vacuuming." *Id*. Supporting Dr. Pagnotta's findings is Dr. Farber's medical report, dated December 10, 1997. *Id*. at pp. 120-22.  Upon examination, Dr. Farber, a Rheumatologist, noted that Spencer's physical exam and history is "very suggestive of fibromyalgia." *Id*. at 122.  Dr. Farber stated that due to Spencer's "chronic muscle pain and increased muscle tone with diminished endurance, his ability to do any kind of physical tasks or remain in a particular position for more than an hour or so is severely limited. . . . [Spencer's] prognosis is likely to be poor." *Id*.  Aside from the SSA assessments, no other physician offered an opinion as to the limiting effects of Plaintiff's impairment.

The ALJ's initial consideration of these opinions constituted the basis for the Appeals Council's reversal and remand wherein the ALJ was specifically directed to "[g]ive further consideration to the treating and examining source opinions . . . and explain the weight given to such opinion evidence." *Id*. at p. 255.  The Council noted that in his initial decision, the ALJ gave little weight to Dr. Pagnotta's opinion due to the paucity of medical findings, yet he never re-contacted the medical source for clarification.  *Id*. at p. 254.  Also absent from the ALJ's decision was an evaluation of Dr. Farber's opinion, which as the Appeals Council acknowledged, was consistent with Dr. Pagnotta's assessment. *Id*.  Thus, in remanding the case, the Appeals Council further directed the ALJ to re-contact Dr. Pagnotta and ask for further evidence and clarification of such opinion with regard to Spencer's RFC. *Id*.  In pursuit of this further evidence, the Appeals Council noted the ALJ could enlist the aid of Plaintiff's representative.  *Id.*

Subsequent to the Appeals Councils' remand, ALJ Brown wrote a letter to Plaintiff's attorney noting the case had been remanded and enlisting the attorney's help as follows:

Please obtain any records pertaining to any treatment or diagnostic tests performed **since** the March 25, 1999 decision and forward those reports to this office as soon as possible.

*Id*. at p. 280 (emphasis added).

Nowhere in this letter does ALJ Brown solicit aid in re-contacting Dr. Pagnotta, nor for that matter is Dr. Pagnotta even mentioned in this letter.   In the same vein, this Court searched the entire Administrative Transcript and has not been able to uncover any indication that the Social Security Agency or the ALJ himself attempted to re-contact Dr. Pagnotta.[6]  Yet, in his May 2002 Decision, ALJ Brown states he attempted to re-contact Dr. Pagnotta and enlisted Attorney Thomas Erwin's aid.  *Id*. at p. 17.  According to ALJ Brown, Attorney Erwin was able to obtain some additional evidence, which were entered as exhibits, but did not obtain any additional statements from Dr. Pagnotta.  *Id*.  We are troubled by the ALJ's recitation of how he enlisted Attorney Erwin's aid especially in light of the absence of any notation in the record which would suggest that the ALJ himself attempted to contact Dr. Pagnotta and because his letter to Erwin simply asked for medical treatment records performed **since** the first ALJ Hearing.  Even if Attorney Erwin's assistance was properly solicited and he failed to provide an updated opinion, this did not, in our assessment, satisfy the ALJ's obligation to follow the Appeals Council's remand in seeking clarification from Dr. Pagnotta.  In this regard, we find that the ALJ failed to comply with the Appeals Council's remand and his noncompliance constitutes reversible error.

Nevertheless, without the benefit of an updated opinion, the ALJ evaluated the medical evidence and gave Dr. Pagnotta's opinion that Plaintiff was incapable of returning to work "little weight" for two reasons.  First, as the ALJ correctly noted, the ultimate determination of disability is reserved for the

---

[6] There is a letter from ALJ Brown to Attorney Erwin seeking signed medical authorizations so that additional evidence could be procured.  *Id*. at pp. 256 & 263.  It is unclear, however, whether an authorization for Dr. Pagnotta was included.

Commissioner.  *See* 20 C.F.R. § 404.1527(e)(1).  This is an accurate recitation of the legal standard to be applied and we do not contest the propriety of this determination.  Second, the ALJ determined that Dr. Pagnotta's statement is "not well-supported by the minimal objective clinical and laboratory findings and offers little insight into how the claimant's ability to perform work related tasks would be limited by his impairments."  Tr. at p. 17.  Extrapolating further, the ALJ stated that Dr. Pagnotta's statement is "inconsistent with other substantial evidence in the medical record[,]" namely the observations of Drs. Staunton, Rogers, Hameed, and Hughes, and further inconsistent with the "minimal treatment which [Spencer] has received."  *Id.* at p. 18.  We find that the ALJ did not give proper weight to Spencer's Treating Physicians' opinions and provided improper bases for failing to do so.  We further find that the ALJ's RFC determination is not supported by substantial evidence.

Once again, the ALJ ignores the well-documented opinion of Spencer's Treating Physician on the basis of the lack of medical evidence supporting such opinion.  In terms of the disabling effect fibromyalgia poses, "[n]umerous courts have recognized that evaluating the nature and severity of this condition in the context of social security disability review has proven to be difficult because of the elusive nature and the lack of objective tests that can conclusively confirm the existence of the disease."  *Willoughby v. Comm'r of Soc. Security*, 332 F. Supp. 2d 542, 546 n.3 (W.D.N.Y. 2004) (collecting cases such as *Green-Younger v. Barnhart*, 335 F.3d at 108; *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000); *Kelley v. Callahan*, 133 F.3d 583, 585 n.2 (8th Cir. 1998); *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996); & *Preston v. Sec'y of Health and Human Servs.*, 854 F.2d 815, 818 (6th Cir. 1988)).  Yet, despite the lack of objective clinical measurement, "fibromyalgia is a potentially disabling impairment that can provide the basis for disability insurance . . . in the appropriate case."  *Id.* (citing *Green-Younger*, 335 F.3d at 108-09 & *Soto v. Barnhart*, 242 F. Supp. 2d 251, 256-57 (W.D.N.Y.

2003)).  Notwithstanding, an ALJ may "consider other factors in evaluating a diagnosis of fibromyalgia . . ., such as whether the record contains a detailed clinical documentation of the claimant's symptoms . . . and whether the physicians who diagnosed the claimant with fibromyalgia . . . reported on the severity of his or her condition[.]"  *Brunson v. Barnhart*, 2002 WL 393078, at *16 (E.D.N.Y. Mar. 14, 2002) (citations omitted).

In rendering his conclusion, the ALJ improperly ignored the medical record and the supporting documentation underlying the basis for the fibromyalgia diagnosis.  Similarly, the ALJ underscored the longstanding relationship Dr. Pagnotta had with Spencer, which after consulting with several specialized physicians, allowed Dr. Pagnotta tremendous insight into Spencer's condition and the disabling effects thereof.  Consistently throughout the record, Plaintiff was noted on examination by various physicians to exhibit tenderness over the paraspinal muscles in his cervical spine, trapezius, and rhomboid.  Tr. at pp. 121, 125, 127, 128, 143, 147, 152, 161, 180, 182, 194, 201, & 210.  Plaintiff further exhibited other symptoms typically associated with fibromyalgia, such as irritable bowels, bruxism,[7] headaches, history of depression, fatigue, and panic attacks.  *See, e.g.*, Tr. at pp. 120-21, 124-25, 128-29, 141, 169-70, etc.; *see also The Merck Manual* at p. 481 (noting that typical symptoms include poor sleep, anxiety, fatigue, irritable bowels, etc., all of which were exhibited by Spencer).  The ALJ further ignored the multitude of tests performed which failed to uncover any abnormality which would produce the pain Spencer reported.  Because of the elusive nature of this disease, these negative findings corroborate and lend further support to the diagnosis of fibromyalgia through a process of elimination.  *See Green-Younger v. Barnhart*, 335 F.3d at 109; *see also The Merck Manual* at p. 481

---

[7] Bruxism is "an oral habit consisting of involuntary rhythmic or spasmodic nonfunctional gnashing, grinding, and clenching of teeth in other than chewing movements of the mandible, usually performed during sleep, which may lead to occlusal trauma."  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 233 (28th ed. 1994).

(noting that the disease is one of exclusion). Thus, the ALJ erred when he discounted Dr. Pagnotta's opinion on the basis of the absence of objective medical evidence.

Similarly, the ALJ erred in stating that Dr. Pagnotta's opinions were inconsistent with substantial evidence in the record. Apparently in rendering this assessment the ALJ ignored the fact that in cases of fibromyalgia, physical examinations usually yield normal results. *See Green-Younger v. Barnhart*, 335 F.3d at 108. Instead of affording the proper weight to Spencer's treating physicians, the ALJ accepted the opinions of SSA Consulting Physicians Rogers and Hameed. The assessments of these Agency Consultants do not amount to evidence substantial enough to outweigh the Treating Physician's opinions unless such opinions themselves are supported by evidence in the record. *See Hidalgo v. Bowen*, 822 F.2d 294, 297 (2d Cir. 1987) ("A corollary to the treating physician rule is that the opinion of a non-examining doctor by itself cannot constitute the contrary substantial evidence required to override the treating physician's diagnosis."); 20 C.F.R. § 404.1527(f) (1991 Amendments limited the holding in *Hidalgo* by allowing the opinions of non-examining sources to override treating sources' opinions, provided they are supported by evidence in the record). Given the fact that Dr. Pagnotta's length of treatment far outweighed the amount of time Plaintiff was seen by other physicians, that Plaintiff was only seen by Dr. Rogers once and his evaluation did not detail the severity of his impairment except to say he could get on and off the examining table, and Dr. Hameed never personally examined Plaintiff, the ALJ's determination to give little weight to Dr. Pagnotta's opinion does not comport with the ALJ's obligation under the Regulations. *See* 20 C.F.R. § 404.1527(d)(2). Furthermore, the ALJ did not even discuss the fact that Dr. Farber's 1997 opinion corroborated and elaborated upon Dr. Pagnotta's statement. Instead, he disregarded Dr. Farber's opinion since he only saw Spencer once and did not have an ongoing treatment relationship with Spencer and because his

opinion was "poorly supported by the objective clinical laboratory findings[.]" Tr. at p. 17. Yet, the ALJ gave more weight to other physicians who similarly did not have the "ongoing treatment relationship" and, in doing so, disregarded the intangible aspects of Plaintiff's disease.

The ALJ's reasoning for rejecting Dr. Pagnotta's opinion is further flawed in that the ALJ incorrectly stated that Dr. Pagnotta's opinion was inconsistent with the treatment Plaintiff received. The ALJ noted that at the time Dr. Hameed made his July 1998 Assessment, Plaintiff's only treatment consisted of taking Tylenol. Tr. at p. 18. However, the medical evidence shows that prior to Dr. Hameed's determination in 1998, not only had Plaintiff attempted physical therapy over a number of years, but in terms of medications, had also taken Relafen, Robaxin, Flexeril, and Motrin. *See id.* at pp. 122-23, 143, 150-51, 163, 166, 187, 198, 200, & 205-08. And, after the second Hearing, the ALJ was provided with a list of various medications Plaintiff received as well as a note from Dr. Lindman indicating that due to financial hardships, he had been providing Spencer with samples of medications such as Celexa, Ultram, Lipitor, and Welchol. *Id.* at pp. 307-08. The ALJ further noted that if Plaintiff was "truly suffering from an impairment as debilitating as Dr. Pagnotta's November 1996 letter would suggest, it would be expected that he would be receiving much more aggressive treatment, or he would be expected to be in far worse shape when examined years later." *Id.* at p. 18. However, in making his assessment on the weight to be afforded to Dr. Pagnotta's opinion, the ALJ should not have substituted his own judgment or "expertise" against not only that of Plaintiff's Treating Physician, but also the other physicians who had evaluated and treated Plaintiff over the years. The determination of the course of treatment for fibromyalgia, myofascial pain and/or chronic pain syndrome should be left to the doctors and should not be dictated by the ALJ. Furthermore, the fact that the severity of the pain felt by Plaintiff remained consistent throughout the years does not mean that the conclusions and

*-17-*

diagnoses of the physicians were somehow incorrect.  Nor can it conclusively be stated that just because Plaintiff's course of treatment subsided, his pain had or has been alleviated, rather, such diminution of treatment  is more of an indication that there is very little by way of treatment that can be of aid to Spencer.  *See* Tr. at pp. 111-12 (letter from Dr. Pagnotta, dated May 19, 1998, listing various treatments employed which have proved unsuccessful and noting that there is little more that can be done to alleviate Spencer's pain).

Which leads us to the discussion of Plaintiff's credibility, for which the ALJ found Plaintiff's statements concerning his symptoms of pain and disabling effects to not be fully credible.  Tr. at p. 18. As it was incorrect for the ALJ to discount Spencer's Treating Physicians' opinions on the basis of the paucity of medical evidence, so too was it erroneous for the ALJ to discount Plaintiff's subjective complaints of pain.  Under 20 C.F.R. § 404.1529(a), subjective pain will be considered in determining a claim for disability to the extent in which "symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  Nevertheless, "[s]ubjective *pain* may serve as the basis for establishing disability, even if . . . unaccompanied by positive clinical findings or other 'objective' medical evidence."  *Donato v. Sec'y of Dep't of Health and Human Servs.*, 721 F.2d 414, 419 (2d Cir. 1983) (emphasis in original) (quoted in *Green-Younger v. Barnhart*, 335 F.3d at 108 & *Rosato v. Barnhart*, 352 F. Supp. 2d 386, 396 (E.D.N.Y. 2005)).  Symptoms such as pain are to be considered by the ALJ at all steps of the disability determination.  20 C.F.R. § 404.1529(a),(d).  A claimant's statements about the persistence, intensity, and limiting effects of these symptoms are evaluated in the context of all objective medical evidence, which includes medical signs and laboratory findings.  *Id*. at § 404.2539(c)(4).

In a case where subjective symptoms are identified, "the ALJ has discretion to evaluate the

credibility of the claimant and to arrive at an independent judgment, in light of the medical findings and other evidence, regarding the true extent of the pain alleged." *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y 1987). Where the ALJ resolves to reject subjective testimony with regards to pain and other symptoms, he or she "must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his [or her] determination is supported by substantial evidence." *Id*. at 608 (citing, *inter alia*, *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1045 (2d Cir. 1984)). In evaluating a claimant's complaints of pain, an ALJ must consider several factors set forth in the Regulations including:

(i)     [The claimant's] daily activities;
(ii)    The location, duration, frequency, and intensity of [claimant's] pain or other symptoms;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication [claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms;
(v)     Treatment, other than medication, [claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms;
(vi)    Any measures [claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms (e.g., lying flat on [his or her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii)   Other factors concerning [claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

In cases dealing with fibromyalgia, "the credibility of the claimant's testimony regarding [his] symptoms takes on substantially increased significance in the ALJ's evaluation of the evidence[.]" *Coyle v. Apfel*, 66 F. Supp. 2d 368, 376 (N.D.N.Y. 1999) (internal quotation marks and citation omitted). As stated previously, "physical examinations will usually yield normal results - a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." *Green-Younger v. Barnhart*, 335 F.3d at 108-09 (quoting *Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d at 45). Thus, the Second Circuit has noted that "the absence of swelling joints or other

orthopedic and neurologic deficits 'is no more indicative that the patient's fibromyalgia is not disabling than the absence of a headache is an indication that a patient's prostate cancer is not advanced.'" *Id.* at 109 (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).   Accordingly, negative findings in the medical records "simply confirm a diagnosis of fibromyalgia by a process of exclusion, eliminating 'other medical conditions which may manifest fibrositis-like symptoms of musculoskeletal pain, stiffness, and fatigue.'" *Id.* (quoting *Preston v. Sec'y of Dep't of Health and Human Servs.*, 854 F.2d 815, 819 (6th Cir. 1988)).

ALJ Brown found that Spencer's testimony was inconsistent with the medical evidence.  Tr. at p. 18.  As noted in Brown's decision, Plaintiff testified that there were gaps in his medical treatment due to the lack of medical insurance and financial hardships associated with not working.  Spencer further testified that he has severe pain every day and experiences difficulty getting dressed, brushing his teeth, shaving, and performing household chores.  *Id.* at pp. 18 & 347.  The ALJ also noted Spencer sits on a stool to shower and fix dinner and is unable to shovel snow or do any repetitive tasks such as folding laundry.  *Id.*  at p. 18.  In discounting Spencer's credibility, the ALJ stated:

> Despite [Spencer's] alleged impairments in his ability to own and manage five rental properties during the time period that he was allegedly disabled, I find it significant that in [Spencer's] previous hearing [he] had testified that he was living on the 3rd floor apartment and he now claims that he lives in the first floor apartment.

*Id.*

The Court is perplexed as to why the ALJ felt this morsel of information was significant in discrediting Plaintiff's allegations of disabling pain.  At the first Hearing, Plaintiff explained that he managed various rental apartments but many of them remained vacant because he could not maintain the upkeep himself nor did he have the funds to hire someone to clean and re-paint the apartments so that they would be ready for new tenants.  *Id.* at pp. 323 & 326-27.  He further explained that because he could

not maintain the properties, he was forced to sell one rental property, while another was foreclosed. *Id*. at pp. 322-23.  Then, when it was revealed that he lived on the third floor of an apartment building he owned while the first floor remained vacant, the ALJ questioned why he did not move into the first floor, to which Spencer retorted he was constrained by his financial situation since he could not hire movers and could not move his personal property himself.  *Id*. at p. 327.

At the second Hearing, Spencer explained how he filed for bankruptcy and no longer owned the rental properties.  *Id*. at p. 346 ("I couldn't afford the properties.  I couldn't pay anybody to work on them.  I couldn't work on them.  So when they became empty they weren't rented back out and therefore I didn't have the money to pay the mortgage.").  He further testified that he lived with his wife on the first floor of a home he owned.  The ALJ never asked for clarification regarding how it came to be that he once lived on the third floor and now resided on the first floor.  If anything, the perceived inconsistency further supports Plaintiff's subjective complaints of pain as he previously explained the difficulty he encountered living on the third floor but had little choice in the matter.  Again, we do not understand why this statement was significant for the ALJ in discounting Spencer's credibility and the ALJ does not lend any further explanation.  The only other evidence supplied by the ALJ in explaining his reasons for rejecting Spencer's allegations of disabling pain is a November 1996 report authored by Dr. Emrich wherein Plaintiff reported he had increased pain in his neck and arms because he was increasing his activities and was doing some heavy work.  *Id*. at pp. 18 & 127.  This hardly amounts to substantial evidence establishing Plaintiff's subjective complaints of pain are not disabling, especially in light of the fact that no where else in the record can we deduce that Plaintiff engaged in such "heavy" work throughout the time of his treatment.  *Compare* Tr. at p. 127 *with* pp. 111-236 & 282-306.

The Court finds that the ALJ did not take into account all of the factors set forth in 20 C.F.R. § 404.1529(c) and failed to consider medical findings associated with fibromyalgia in conjunction with Plaintiff's statements of his subjective symptoms. Once again, the ALJ improperly required objective medical evidence. It is undisputed that the doctors who evaluated Plaintiff found that he had fibromyalgia, myofascial pain, and/or chronic pain syndrome. "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." S.S.R. 96-7p, 1996 WL 374186, at *5, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Clams: Assessing the Credibility of an Individual's Statements* (S.S.A. 1996). Plaintiff complained all along that he had pain in his arms, neck, shoulders, and other such areas, and the fact that there may be negative findings in the medical records is not indicative that Plaintiff was not truthful about his symptoms. *See generally* Tr. at pp. 111-236 & 282-306; *Green-Younger v. Barnhart*, 335 F.3d at 109. In fact, these opinions and diagnoses actually bolster Plaintiff's statements regarding pain and should have been properly credited. *Id*. at 108-09. As is the fact that Plaintiff was seen by various specialists in varying fields, such as neurosurgery, rheumatology, and even psychology, and not one physician could offer a diagnosis which could account for Plaintiff's complaints other than fibromyalgia and/or chronic pain syndrome.

Furthermore, the ALJ did not provide any reasoning that would put into question Plaintiff's testimony regarding his inability to do many daily activities without any difficulty. *See id.* at p. 18. Moreover, the ALJ did not discuss the duration, frequency, and intensity of Plaintiff's pain or other symptoms, and he did not take notice that Plaintiff, on many occasions, attempted physical therapy to alleviate his pain but that physical therapy was ineffective. *See generally id.* at pp. 114-236 & 282-306; *see also* pp. 111-13 (noting that Dr. Pagnotta, Plaintiff's treating physician, stated that there would be

little benefit to continue physical therapy, especially since confirmed by specialists).

### E.  Reversal or Remand

Having found the ALJ committed several errors in his disability determination and that such errors permeated the entire disability review, this Court is vested with the authority to either reverse or modify the final decision of the Commissioner with or without remand.  *See* 42 U.S.C. § 405(g); *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004); *Verginio v. Apfel*, 1998 WL 743706, at *2 (N.D.N.Y. Oct. 23, 1998).   Remand is appropriate when there are gaps in the record, further development of the evidence is needed, or where the ALJ has applied an improper legal standard.  *See Butts v. Barnhart*, 388 F.3d at 385; *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *Verginio v. Apfel*, 1998 WL 743706, at *2.   Furthermore, remand is warranted if "further findings or explanation will clarify the rationale for the ALJ's decision." *Steficek v. Barnhart*, 462 F. Supp. 2d 415, 418 (W.D.N.Y. 2006) (citing *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)).

Reversal and remand for the calculation of benefits, on the other hand, is suitable "when there is 'persuasive proof of disability' [in the record] and further development of the record would not serve any purpose." *Steficek v. Barnhart*, 462 F. Supp. 2d at 418 (quoting *Rosa v. Callahan*, 168 F.3d at 83); *see also Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983) (noting that reversal without remand for additional evidence is particularly appropriate where the payment of benefits was already delayed for four years and remand would likely result in further lengthening the "painfully slow process" of determining disability); *Verginio v. Apfel*, 1998 WL 743706, at *2. Notwithstanding, if there is insufficient evidence of the claimed disability, "delay alone is not a valid basis for remand solely for calculation of benefits." *Steficek v. Barnhart*, 462 F. Supp. 2d at 418-19

(citing *Bush v. Shalala,* 94 F.3d 40, 46 (2d Cir. 1996)).

In this case, a remand solely for the calculation of benefits is most appropriate.  Had the ALJ given proper weight to Plaintiff's Treating Physicians' opinions as to the diagnosis and limiting effects of his impairment, and to Plaintiff's subjective complaints of pain, it is clear that he should have found Plaintiff could not perform any work available in the national economy.

### III.  CONCLUSION

In light of the foregoing discussion, we find the ALJ erred by 1) failing to re-contact Dr. Pagnotta; 2) incorrectly discounting the multiple opinions diagnosing Plaintiff with fibromyalgia; 3) improperly discounting the Treating Physicians' opinions as to the disabling effect of Plaintiff's impairment; and 4) improperly discrediting Plaintiff's subjective complaints of pain.  In rendering his decision, ALJ Brown failed to follow the Appeals Council's dictates and applied incorrect legal standards.  Furthermore, the ALJ's decision that Spencer is not disabled is not supported by substantial evidence.  Thus, this Court recommends that decision be vacated and this case be remanded solely for calculation of benefits.

**WHEREFORE**, it is hereby

**RECOMMENDED**, that the Commissioner's decision denying disability benefits be **VACATED and REMANDED** solely for the calculation of benefits pursuant to sentence four of 42 U.S.C. § 405(g); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE**

**APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of*

*Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV.

P. 72, 6(a), & 6(e).


Date:   August 22, 2007
        Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge